IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO. 3:07-cr-00068 |
| | ) | |
| MICHAEL EARL DAVIS | ) | JUDGE CAMPBELL |

MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Compassionate Release (Doc. No. 32). The

Government filed a Response in opposition (Doc. No. 37), and Defendant filed a Reply

(Doc. No. 41). For the reasons stated below, Defendant's request is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2007, Defendant Michael Earl Davis pleaded guilty to being a convicted felon

in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924, and brandishing a

firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

(Doc. No. 20). Pursuant to a Rule 11(c)(1)(C) plea agreement, the parties agreed to a sentence of

300 months custody. (*Id.*). On August 31, 2007, former Judge Todd Campbell accepted the plea

agreement and imposed the agreed upon term with 5 years of supervised release to follow. (Doc.

Nos. 25, 26). Through counsel, Defendant filed a motion for compassionate release, citing the

COVID-19 pandemic and his health conditions. (Doc. No. 32).

The COVID-19 coronavirus pandemic is a national public health emergency.[1] As of April

1, 2021, COVID-19 has killed more than 549,000 Americans and infected over 30 million.[2] The

---

[1] *See Renewal of Determination that a Public Health Emergency Exists* (Apr. 15, 2021),
www.phe.gov/emergency/news/healthactions/phe/Pages/covid-19-2Oct2020.aspx (renewing, effective Jan 21, 2021,
determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since
January 27, 2020) (last visited Apr. 26, 2021).

[2] *CDC, COVID Data Tracker*, http://covid.cdc.gov/covid-data-tracker (last visited Apr. 1, 2021)

Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at increased risk for severe illness and death if they contract the virus.[3] The CDC defines "severe illness" as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death.[4] According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus."[5]

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under Section 3582(c)(1)(A) to allow prisoners to directly petition courts. Until this amendment, compassionate release motions could only be brought by the Director or the Bureau of Prisons, an option that was infrequently exercised.[6] The compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

[3]    *See* CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Apr. 1, 2021).

[4]    *See* CDC, *Evidence Used to Update the List of Underlying Medical Conditions That Increase a Person's Risk of Severe Illness from COVID-19*, cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited Apr. 1, 2021).

[5]    *See* CDC, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. (last visited Apr. 1, 2021).

[6]    The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id.*

2

> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims processing rule. *U.S. v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The Sixth Circuit has considered the exhaustion requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that it "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*. at 834. If a prisoner files an untimely motion for compassionate release, the Court should dismiss the motion without prejudice. *Id*.

The Sixth Circuit has instructed that the statute imposes a three-step test. *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at \*6 (6th Cir. Nov. 20, 2020). "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*. Step two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*. Then in step three, the court must consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit addressed the applicability of the Sentencing Commission policy statement to a motion for compassionate release filed directly with the court by imprisoned persons. *See id*. at \*7-9. The Sixth Circuit noted that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement pertaining to reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and the existing policy statement applies only

3

to motions filed by the BOP. *Id.* Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering a motion for compassionate release filed by an incarcerated person, a court may "skip" step two of the inquiry and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at *9.

### III. ANALYSIS

As an initial matter, the Court finds that Defendant has met the exhaustion requirement of Section 3582(c)(1)(A). Defendant submitted a request to the Warden. (Doc. No. 32-1). More than 30 days have elapsed, and Defendant has not received a reply. (Doc. No. 32 at 3). The Government does not contest that he has exhausted his administrative remedies. (Doc. No. 37 at 6).

Defendant seeks compassionate release due to his risk of severe illness or death from COVID-19 due to his underlying medical conditions – COPD, Hepatitis C, and asthma – and the heightened risk of contracting COVID-19 in prison. COPD has been identified by the CDC as a condition that puts an individual at increased risk for severe illness from COVID-19. Asthma has been identified as a condition that may put an individual at increased risk.[7] The Government disputes that Defendant's conditions rise to the level of extraordinary and compelling and additionally argues that Defendant's vaccination status should be considered. (Doc. No. 37). In his Reply, Defendant argues that his vaccination status does not eliminate his risk. (Doc. No. 41 at 3).

The Court acknowledges that, based on CDC guidance, Defendant's medical conditions increase his risk of severe illness from COVID-19. However, even if the Court found that extraordinary and compelling reasons existed in this case, the relevant Section 3553(a) factors do not weigh in favor of a reduced sentence.

---

[7]    *See* CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Apr. 1, 2021).

Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with a number of factors including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; the applicable Sentencing Guidelines range; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Defendant argues that the factors weigh in favor of a sentence of time served, particularly providing just punishment and deterring future criminal conduct. In support of his argument Defendant states that his age and conduct while incarcerated demonstrate that he is unlikely to recidivate and that making him serve the remainder of his sentence in the midst of a pandemic would make the sentence "more punitive than ever intended." (Doc. No. 41). Defendant additionally indicates his traumatic childhood and need for treatment as cause for finding a sentence reduction to time-served appropriate and necessary. He states that programming in his facility has halted due to the pandemic. (*Id*. at 5).

The Government disputes that a reduction in sentence is warranted in this case. In support of its argument, the Government cites the offense conduct, the Defendant's criminal history, and his designation as an Armed Career Criminal and argues that the sentence properly reflects the district court's evaluation of the factors at the time of sentencing. (Doc. No. 37 at 9, 10). In closing, the Government points out that Defendant has served less than 60% of his sentence. (*Id*.).

In considering the arguments of the parties and the factors set forth in Section 3553(a), the Court does not find a reduction to time-served appropriate in this case. The Court gives particular consideration to the following factors.

*Nature and Circumstances of the Offense and History and Characteristics of the Defendant.* According to the "Factual Basis" section of the plea agreement, Defendant's offenses of conviction arose from a string of robberies committed on the evening of August 2, 2006. Over the course of approximately two hours, Defendant committed four robberies, displaying a firearm at each, before being apprehended by Metropolitan Nashville Police Officers. (Doc. No. 20 ¶ 9). According to the Presentence Investigation Report, before the instance offense, Defendant had been convicted three times of aggravated robbery, with circumstances similar to those outlined in the "Factual Basis" in this case, and served lengthy sentences for each conviction.

*The Need to Protect the Public, Afford Adequate Deterrence, and Promote Respect for the Law.* At the time of sentencing, it was determined that Defendant had the necessary predicate offenses to qualify as both a Career Offender and an Armed Career Criminal. Defendant has a lengthy criminal history, which includes convictions for theft, burglary, aggravated robbery, escape, and domestic assault. His criminal conduct has not been deterred by previous custody sentences. Additionally, because Defendant's criminal history extends into his forties and includes the repetition of the same or substantially similar conduct, the Court finds the argument that Defendant is unlikely to recidivate unpersuasive.

*Sentencing Guideline Range.* The superseding information in this case charged the defendant with possession of a firearm and brandishing a firearm in relation to only one of the four robberies. (Doc. No. 16). Had Defendant been charged with and convicted of a violation for each of the four robberies, he would have potentially faced a significantly longer sentence. The Court

is also mindful of the impact of the plea agreement in this case, which resulted in a sentence in the middle of the guidelines range. (Doc. No. 20).

Defendant raises understandable concerns based on the COVID-19 pandemic. However, given the serious nature of the criminal conduct for which he was sentenced, the Court finds that the Section 3553(a) factors do not support a sentence of "time served." A time-served sentence would particularly undermine the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to promote respect for the law. Accordingly, Defendant's Motion for Compassionate Release (Doc. No. 32) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

7